# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director*

Michelle A. Gelernt
*Attorney-in-Charge*

December 12, 2025

**VIA ECF AND EMAIL**

The Honorable Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *United States v. Anthony Morgan*, 24 Cr. 371 (FB)

Dear Judge Block:

I write to request early termination of Anthony Morgan's supervised release. As of the writing of this letter, Mr. Morgan has completed over one year of his two-year supervised release term and has incurred no violations during his supervisory period. Since his release from custody, he has truly turned over a new leaf. Mr. Morgan's accomplishments over the past year are particularly remarkable given the challenges he previously faced maintaining stable employment and housing, and staying out of trouble, largely due to his long-term dependence on alcohol and marijuana. This letter outlines Mr. Morgan's exemplary conduct over the last year, including consistent employment, and voluntary participation in an outpatient drug treatment program. Through his hard work, he has shown that he no longer requires the rehabilitative services that supervised release provides. Accordingly, the interests of justice warrant early termination of Mr. Morgan's term of supervised release.

## I.     BACKGROUND

On November 1, 2024, this Court sentenced Mr. Morgan to time served followed by two years' supervised release after Mr. Morgan pleaded guilty to one escape count, in violation of 21 U.S.C. § 751(a), after he walked away from a halfway house and did not return. It is of note that Mr. Morgan was arrested for this violation approximately two years after the conduct began. He spent the entirety of the pretrial detention period in the custody of the Bureau of Prisons at the Metropolitan Detention Center in Brooklyn, and lost all the good time credits he had earned during his custodial sentence in the underlying case. Mr. Morgan's supervised release term began immediately following sentencing on November 1, 2024. Since that time, he has been under supervision, initially by the Probation Office in the Eastern District of New York, and since October 2025 by the Southern District of New York.

Soon after his release into the community, Mr. Morgan secured steady employment, working in distribution with FreshDirect. In January 2025, he began working there through a temporary

1

employment agency and because of his diligent work ethic and good relationship with management, Mr. Morgan was transferred to a permanent role with Fresh Direct. Mr. Morgan continues to work at Fresh Direct and is constantly pushing himself to work harder and do better. In September 2025, he took on a second job at On Track, continuing to do warehouse distribution work, so that he can continue saving money to hopefully buy a car.

Mr. Morgan has managed to do all this while simultaneously navigating the New York City shelter system. Following his release from custody, he entered the men's shelter system. He persisted through multiple shelter placements until he finally secured his own rent-stabilized apartment in the South Bronx. For the first time in his life, Mr. Morgan feels he has built stability worth fighting for and he is committed to continuing the hard work he has been engaged in over the past year.

## II.     LEGAL STANDARD

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Section 3583(e) gives the Court authority to terminate supervision at any time after the expiration of one year, if such action is "warranted by the conduct of the defendant released and the interests of justice." 18 U.S.C. § 3583(e). When weighing whether to grant such an application, the Court must "consider[] the factors set forth in [18 U.S.C. §§] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)". *United States v. Bennett*, No. 11-cr-424 (AMD), 2021 WL 4798827 (E.D.N.Y. Oct. 14, 2021). Importantly, the Court cannot consider the factors set out in 18 U.S.C. § 3553(a)(2)(A): "the need for the sentence imposed[] to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Esteras v. United States*, 606 U.S. --, 145 S.Ct. 2031, 2040 (2025).

The Second Circuit has stressed that early termination is available based on a defendant's post-release conduct alone and, "there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016).

Supervised release's rehabilitative purpose has been noted by many courts that have addressed the issue. The Supreme Court has indicated that, "[s]upervised release, in contrast to probation, is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). The Court further elaborated that supervised release is meant "to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Johnson*, 529 U.S. at 60. The Court then used this rationale to hold that prison time and supervised release are not "interchangeable." *Id.* This sharp distinction between supervised release and incarceration or probation illustrates the rehabilitative, and not punitive, purpose of supervised release.

The Second Circuit has also clearly established the rehabilitative purpose of supervised release:

> Supervised release was established by the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., and was designed "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." S.Rep. No. 98–225, at

124 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3307…Supervised release is
not, fundamentally, part of the punishment; rather, its focus is rehabilitation.

*United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015), as amended (July 22, 2015). District courts in this circuit have noted that "[t]he purpose of federal supervised release is to assist people who have served prison terms with rehabilitation and reintegration into the law-abiding community." *United States v. Trotter*, 321 F. Supp. 3d 337, 339 (E.D.N.Y. 2018). *Trotter* makes clear that "[s]upervised release is designed to assist with rehabilitation, not to punish" and notes that courts are directed by Congress, in most cases, "to determine which defendants would benefit from the rehabilitative purposes of supervised release." *Id.* at 345. Those who no longer need the rehabilitative purposes of supervised release, such as Mr. Morgan, then qualify for early termination.

The United States Sentencing Commission recently adopted amendments to the Sentencing Guidelines related to supervised release. Notably, the Commission added a new policy statement at § 5D1.4 (Modification, Early Termination, and Extension of Supervised Release). The new policy statement encourages courts to undertake an individualized assessment of the need for ongoing supervision and to discharge the defendant from further supervision after one year of supervised release if the court determines that termination is warranted by the conduct of the defendant and the interests of justice.

The newly amended Guideline also sets forth certain factors courts should consider in deciding a motion for early termination:

i. any history of court-reported violations over the term of supervision;
ii. the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
iii. the defendant's substantial compliance with all conditions of supervision;
iv. the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
v. a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and
vi. whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

U.S.S.G. § 5D1.4 cmt. n.1(B). When applying these factors to Mr. Morgan's case, this Court will find that his exemplary behavior and lack of violations point toward early termination.

### III.   CONSIDERING BOTH THE RELEVANT 3553(a) FACTORS AND THE NEWLY AMENDED GUIDELINES, MR. MORGAN'S CONDUCT ON SUPERVISION WARRANTS EARLY TERMINATION.

Early termination is appropriate in Mr. Morgan's case. Mr. Morgan's conduct on supervised release is laudable and he has not incurred any violations since he began his term in November 2024.

He has been gainfully employed in the logistics industry since that time and has held stable housing in the Bronx, New York.

When Mr. Morgan first came into federal custody in March 2019, he had a significant history of substance abuse and little employment history. The Presentence Investigation Report for Mr. Morgan's underlying case describes him as having smoked "at least 10 joints of marijuana daily" from the age of 12. *See* PSR at ¶ 60. Between ages 18-35, Mr. Morgan had accrued over a dozen prior misdemeanor convictions, mostly for possessing marijuana. Some of the imposed in his prior state cases included mandatory participation in both inpatient and outpatient drug rehabilitation programs, but Mr. Morgan continued to struggle to maintain long-term sobriety from both alcohol and marijuana.

But since beginning this term of supervised release, Mr. Morgan has turned his life around in a remarkable way. He has stayed sober, maintained stable employment, and he adeptly navigated the New York City shelter system until he could secure a rent-stabilized apartment in the South Bronx. Mr. Morgan's commitment to staying on the right track is extraordinary and merits early termination of supervised release.

After his sentencing and before he was able to secure employment, Mr. Morgan voluntarily attended a drug rehabilitation program for about four weeks, though this was not a condition of his supervision. This shows remarkable dedication for someone who, until that point in time, had frequently failed to complete court-mandated drug rehab, and whose history of drug use interfered with his ability to achieve stable employment. Although his regular attendance at the rehab program declined after he started working, Mr. Morgan has intentionally leveraged his employment to support his mindset shift towards abstinence from drugs and recidivism. Since January 2025, Mr. Morgan has worked full-time at FreshDirect where he was previously placed on temporary assignment through an employment agency. Mr. Morgan works long shifts, usually averaging ten hours per day, five to six days a week, and has developed a reputation for reliability among his supervisors. He has even been promoted since starting with the company. Mr. Morgan appreciates that working helps him achieve his goal of complying with the terms of his supervised release and to avoid reincarceration. For a short period in September 2025, Mr. Morgan even worked a second job at OnTrack and he continues to look for additional employment opportunities.

Mr. Morgan's initiative in securing consistent employment, safe housing, and in taking advantage of drug rehabilitation programs demonstrates substantial personal growth and is reflective of his one-year of perfect compliance with supervised release. Additionally, Mr. Morgan's activities on supervision are reflective of his ability to "lawfully self-manage" and willingness to engage in "appropriate prosocial activities". Together, these factors should serve as a strong indication that there is no additional need for continued supervision.

District courts in this circuit have recognized that early termination is a significant milestone with positive psychological impacts on defendants. *See, e.g., United States v. Roman*, No. 3:06-cr-268-26 (JBA), Order Granting Defendant's Motion for Early Termination of Supervised Release (D. Conn. Jan 4, 2023) at 2 (acknowledging the importance of defendants' "being off papers" and becoming individually responsible without reporting requirements or having to request permission to travel). Accordingly, courts in this District and the Southern District have regularly granted early termination of supervised release for individuals who, like Mr. Morgan, have already accomplished the rehabilitative purposes that supervised release was intended to serve, not just those who have

demonstrated extraordinary achievements. *See, e.g.*, *United States v. Riley*, 16-CR-281 (PMC) (Aug. 22, 2025); *United States v. Bernard*, 98-CR-500 (FB) ECF No. 615 (June 25, 2025); *United States v. Cruz*, (JMF) (S.D.N.Y.), ECF No. 55 (May 6, 2025); *United States v. Oglesby*, 17-CR-065 (LDH) (EDNY) (Apr. 9, 2025); *United States v. Perry*, 16-CR-221 (BMC) (Feb. 25, 2025); *United States v. Lallave*, 19-CR-15 (AJN) (SDNY), ECF No. 51 (Aug. 20, 2024); *United States v. Mangual*, 23-CR-429 (JGK) (SDNY) (Sept. 24, 2024); *United States v. Sprecher*, 19-CR-749 (JPO) (SDNY), ECF No. 46 (Jan. 11, 2024) (terminating supervision effective March 18, 2024); *United States v. Haney*, 19-CR-541 (JSR) (SDNY), ECF No. 40 (Feb. 16, 2024); *United States v. Grullon*, 23-CR-106 (PGG) (SDNY), ECF No. 8 (Oct. 24, 2023); *United States v. Enriquez*, 20-CR-455 (RA) (SDNY), ECF No. 6 (July 12, 2023); *United States v. Morrison*, 07-CR-3 (LAP) (SDNY), ECF No. 967 (May 1, 2023); *United States v. Zavala*, 18-CR-735 (KPF) (SDNY) ECF No. 96 (Apr. 13, 2023); *United States v. Galan*, 14 CR 450 (PKC) (Apr. 10, 2023); *United States v. Callahan*, 08-CR-349 (JGK) (SDNY), ECF No. 27 (June 1, 2018); *United States v. Rodriguez*, 15-CR-216 (JGK) (SDNY), ECF No. 56 (June 13, 2017); *United States v. Kuhtenia*, 11-CR-12 (SDNY), ECF No. 972 (Sept. 18, 2018); *United States v. Sam*, 16-CR-184 (JGK) (SDNY), ECF No. 20 (Feb. 12, 2018); *United States v. Cummings*, 06-CR-481 (JGK) (SDNY), ECF No. 128 (Mar. 6, 2017); *United States v. Bethea*, 05-CR-1234 (DC) (SDNY) ECF No. 190 (Dec. 7, 2015); *United States v. Young*, 20-CR-201 (KMW) (SDNY) ECF No. 75 (Apr. 3, 2024).

Mr. Morgan's conduct on supervised release demonstrates that continued supervision is unnecessary. Early termination is imperative to "reward [a defendant's] determination to lead a responsible life and the success he has already realized", and to "remind others that such laudable progress is possible and will reap rewards." *United States v. Jiminez*, 2021 WL 535208 (E.D.N.Y. Feb 12, 2021) (Dearie, J.). Terminating Mr. Morgan's supervision would encourage similarly situated defendants on supervision that hard work and full compliance can lead to early termination.

## **CONCLUSION**

Mr. Morgan's conduct while under supervision is commendable. He has maintained stable housing and a number of meaningful employment opportunities. He has shown a commitment to lead a law-abiding life and his work ethic is lauded by his supervisors. Early termination will allow Mr. Morgan to continue to pursue positive employment and to serve as a positive example to similarly-situated defendants.

Thank you for your time and attention to this matter.

Respectfully submitted,

_____/s_____
Nora K. Hirozawa, Esq.
Onyx Ngaya Brunner, Legal Intern
Counsel to Mr. Morgan
Federal Defenders of New York
1 Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201

Cc:  AUSA Megan Larkin
     PO Janese Chetuck